**STATE of Iowa, Appellee,**

v.

**Raymond Theodore FREIE, Jr., Appellant.**

No. 68027.

Supreme Court of Iowa.

June 15, 1983.

Francis C. Hoyt, Jr., Appellate Defender and Patrick R. Grady, Asst. Appellate Defender, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen. and Mary Jane Blink, Asst. Atty. Gen., for appellee.

Considered by REYNOLDSON, C.J., and McGIVERIN, LARSON, SCHULTZ, and WOLLE, JJ.

LARSON, Justice.

A jury convicted the defendant, Raymond Theodore Freie, Jr., of first-degree murder, Iowa Code sections 707.1 and 707.2 (1981). On appeal he complains that (1) the evidence was insufficient to support the verdict and (2) cross-examination of his wife improperly exceeded the scope of direct examination. We affirm.

## I. *Sufficiency of the Evidence.*

At trial, the State attempted to prove that the victim, Lanny Casper, was romantically involved with the defendant's wife, that she was planning to divorce the defendant in order to marry the victim, and that as a result of this relationship, the defendant murdered the victim.

The defendant asserts that the record lacks substantial evidence of the mental elements necessary for a rational jury to convict him of murder, either in the first or second degree. Specifically, the defendant claims that the record is devoid of any evidence indicating deliberation on his part in the killing of the victim. As a remedy, the defendant requests a new trial on the charge of manslaughter.

In reviewing the defendant's claim, we keep certain principles in mind. We view the evidence in the light most favorable to the State; all inferences that are fairly and reasonably deducted from the evidence are accepted; and all the evidence, not just that supporting the verdict is considered. Furthermore, the verdict will be upheld if supported by "substantial" evidence, *i.e.,* evidence which would convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt. *State v. Epps,* 322 N.W.2d 288, 289 (Iowa 1982); *State v. Robinson,* 288 N.W.2d 337, 339 (Iowa 1980).

The victim was found in the bathroom of his home fatally shot once through the upper portion of his chest. He had been shot at close range with his own rifle, which was found nearby. Testimony indicated that the bullet followed a path parallel to the ground, piercing the victim's heart. Testimony also revealed that a high level of concentration of antimonium and barium (residue of gunpowder) was found on the palms of the victim's hands indicating that he may have had his hands up in a defensive manner when the fatal shot was fired.

Upon his initial arrest, the defendant made certain statements concerning his whereabouts and involvement in the shooting which were inconsistent with his later trial testimony. At trial, the defendant admitted that after learning of his wife's relationship with "another man," he had discussed with his daughter his intention to harm this "other man." Testimony indicated that he sought out the name and address of the victim and had parked in the vicinity of his home on several occasions during a two-week period prior to the victim's death. The defendant admitted that on at least one occasion he entered the victim's home when no one was there. The defendant also admitted being present at the shooting but claimed that as a result of a scuffle with the victim, the rifle accidentally discharged.

The defendant's version of the incident was that on the day of the shooting he had been waiting for the victim and that when the victim arrived home he went to the door and was invited into the kitchen. Defendant stated that he discussed with the victim his resistance and disapproval of the pending divorce and the future of his children, and then, the victim "got real mad and jumped up, and told me to get the hell out." The defendant claims that as he turned to leave he stumbled over a rifle near the door and picked it up, that the victim then grabbed the gun, and as the two were "pulling it back and forth" the gun went off, striking the victim. The defendant fled but later returned to find the victim lying on the bathroom floor, dead. Frightened, he claimed, he then left with intentions to find his wife.

The State was required to prove the elements of first-degree murder beyond a reasonable doubt. Here, it must show that the defendant killed the victim "with malice aforethought, willfully, deliberately, premeditatedly and with a specific intent to kill." Iowa Code §§ 707.1 and 707.2(1); II Uniform Jury Instructions (Criminal) annot. at No. 708 (1983). To deliberate is to weigh in one's mind or to consider, to contemplate, or to reflect. *State v. Hamilton,* 309 N.W.2d 471, 480 (Iowa 1981); Uniform Jury Instructions, *supra,* No. 702. To premeditate is to think or ponder a matter before acting. *Hamilton,* 309 N.W.2d at 480.

Deliberation and premeditation may be shown by circumstantial evidence through one or more of the following categories of evidence: "(1) evidence of planning activity of the defendant which was directed toward the killing; (2) evidence of motive which might be inferred from entire relationships between defendant and victim; and (3) evidence regarding the nature of killing." *State v. Harrington,* 284 N.W.2d 244, 247–48 (Iowa 1979).

The record indicates that there was considerable evidence of the defendant's surveillance and spying on the victim; a motive was clear from the circumstances; and there was evidence contradicting the defendant's version of the nature of the killing. We believe a jury question was engendered on the issue of premeditation and deliberation and that there was substantial evidence to support the verdict.

## II. *Scope of Cross-Examination.*

The defendant asserts that the trial court erred in allowing the State to cross-examine his wife concerning the fact that he had been in the victim's home prior to the shooting and that certain items of property had turned up missing, moved or misplaced after he had been there. The defendant argues that allowing this testimony was error as it tended to show the defendant was a "bad person" and constituted improper evidence of other crimes.

As a general rule, cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. *See* proposed Iowa Rule of Evidence, 611(b) (effective July 1, 1983); Federal Rule of Evidence 611(b); annot., 45 A.L.R. Fed. 639 (1979); *cf.* Iowa R.Crim.P. 19(1) (prosecution strictly confined to matters testified to on direct when defendant is the witness); *State v. Holmes,* 325 N.W.2d 114, 117 (Iowa 1982). Whether an examination of a witness has exceeded the proper scope of cross-examination is a matter of sound trial court discretion; we will reverse only for an abuse of that discretion, and then only if it appears that prejudice resulted. *Holmes,* 325 N.W.2d at 117.

In the present case, the defendant's wife was questioned on direct examination regarding, among other things, her visits to the victim's home and her observations concerning the condition of the premises and certain objects on the kitchen table. The State, on cross-examination asked, without objection, whether the defendant was ever in the victim's home; the defendant's wife answered that "[h]e told me he was." The State also asked her whether there was ever a time when "things began turning up missing from the house ... misplaced or moved ...." The defendant's counsel objected to the latter question as "beyond the scope of direct examination and it's irrelevant and immaterial to the issue at hand." We believe this cross-examination was fairly within the area of the questions on direct examination dealing with the condition of the premises. We find no abuse of discretion.

The defendant's conviction is affirmed.

AFFIRMED.